**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CHELSEA CRAWFORD, Individually and for Others Similarly Situated<br><br>v.<br><br>MIDWEST GERIATRIC MANAGEMENT, LLC d/b/a MGM HEALTHCARE | **Case No. 4:23-cv-1218**<br><br>Jury Trial Demanded<br><br>FLSA Collective Action |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1.      Chelsea Crawford ("Crawford") brings this collective action to recover unpaid wages and other damages from Midwest Geriatric Management, LLC d/b/a MGM Healthcare ("MGM Healthcare").

2.      Crawford worked for MGM Healthcare as a Licensed Practical Nurse ("LPN") in St. Louis, Missouri.

3.      Like the Putative Class Members (as defined below), Crawford regularly worked more than 40 hours in a week.

4.      But MGM Healthcare did not pay them for all the hours they worked.

5.      Instead, MGM Healthcare automatically deducted 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

6.      Crawford and the Putative Class Members were thus not paid for that time.

7.      But Crawford and the Putative Class Members did not actually receive *bona fide* meal breaks.

8.      Instead, MGM Healthcare required Crawford and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts, and MGM Healthcare continuously subjected them to work interruptions during their unpaid "meal breaks."

9.      MGM Healthcare's auto-deduction policy violates the Fair Labor Standards Act ("FLSA") by depriving Crawford and the Putative Class Members of overtime wages for all overtime hours worked.

## JURISDICTION & VENUE

10.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

11.     This Court has general personal jurisdiction over MGM Healthcare because MGM Healthcare is a domestic limited liability company.

12.     Venue is proper because MGM Healthcare is headquartered in St. Louis, Missouri, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13.     Crawford worked for MGM Healthcare as an LPN in St. Louis, Missouri from approximately April 2023 until June 2023.

14.     Throughout her employment, MGM Healthcare classified Crawford as non-exempt and paid her on an hourly basis.

15.     Throughout her employment, MGM Healthcare subjected Crawford to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

16.     But throughout her employment, Crawford did not actually receive *bona fide* meal breaks.

17.     Crawford brings this action on behalf of herself and other similarly situated hourly, non-exempt MGM Healthcare patient care employees who were subject to MGM Healthcare's automatic meal break deduction policy.

18.     MGM Healthcare automatically deducts 30 minutes a day from these employees' recorded work time for so-called "meal breaks."

19.     But these employees do not actually receive *bona fide* meal breaks.

20.     Thus, MGM Healthcare uniformly deprives these employees of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

21.     The putative collective of similarly situated employees is defined as:

> **All hourly, non-exempt MGM Healthcare employees who received a meal period deduction at any time during the past 3 years ("Putative Class Members").**

22.     MGM Healthcare is a Missouri limited liability company that maintains its headquarters in St. Louis, Missouri.

23.     MGM Healthcare may be served with process by serving its registered agent: **Michael Winter, 477 North Lindbergh Boulevard, Suite 310, St. Louis, Missouri 63141**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

24.     At all relevant times, MGM Healthcare was an "employer" within the meaning of Section 3(d) of the FLSA. 29 U.S.C. § 203(d).

25.     At all relevant times, MGM Healthcare was an "enterprise" within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

26.     At all relevant times, MGM Healthcare was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because MGM Healthcare, had employees engaged in commerce or in the production of

goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as cellphones, computers, medical tools, and personal protective equipment—that have been moved in or produced for commerce.

27.    At all relevant times, MGM Healthcare has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

28.    At all relevant times, Crawford and the Putative Class Members were MGM Healthcare's "employees" within the meaning of Section 3(e) of the FLSA. 29 U.S.C. § 203(e).

29.    At all relevant times, Crawford and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

30.    MGM Healthcare uniformly deducted 30 minutes a day from Crawford's and the Putative Class Members' recorded work time for meal breaks, even when these employees did not actually receive *bona fide*, non-interrupted meal breaks.

31.    As a result, MGM Healthcare failed to pay Crawford and the Putative Class Members wages (including overtime) for the compensable work they performed during their unpaid "meal breaks."

32.    MGM Healthcare's meal break deduction policy, therefore, violates the FLSA by depriving Crawford and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

## FACTS

33.    MGM Healthcare operates nursing and assisted care facilities across Missouri, Iowa, and Oklahoma.[1]

_____

[1]    *See* https://mgmhealthcare.com/ (last visited September 27, 2023); *see also* https://mgmhealthcare.com/centers/ (identifying all MGM Healthcare facilities) (last visited September 27, 2023).

34.     To meet its business objectives, MGM Healthcare hires patient care workers, including Crawford and the Putative Class Members, to work in its various healthcare facilities.

35.     As MGM Healthcare explains, its "facilities … operate like a family."[2]

36.     MGM Healthcare maintains control, oversight, and direction of Crawford and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices, regardless of the specific MGM Healthcare facility they are assigned.

37.     MGM Healthcare requires Crawford and the Putative Class Members to follow its uniform policies, procedures, and protocols, regardless of facility.

38.     Indeed, MGM Healthcare enforces a uniform employee handbook at all the facilities it manages and/or operates.

39.     Crawford's and the Putative Class Members' patient care work must strictly adhere to the uniform quality standards put in place by MGM Healthcare.

40.     MGM Healthcare supervises and controls Crawford's and the Putative Class Members' patient care work and prohibits these employees from straying from its uniform procedures, plans, protocols, and specifications.

41.     MGM Healthcare controls Crawford's and the Putative Class Members' rates and methods of pay, their schedules and assignments, as well as their patient care work.

42.     MGM Healthcare possesses the authority to hire, fire, and discipline Crawford and the Putative Class Members.

43.     Indeed, to work in any of its facilities, patient care employees must be hired through MGM Healthcare.

---

[2] https://mgmhealthcare.com/ (last visited September 27, 2023).

44.    Likewise, MGM Healthcare has a centralized human resources department for all its patient care employees, regardless of facility.

45.    MGM Healthcare maintains employment records for Crawford and the Putative Class Members.

46.    Without the patient care work Crawford and the Putative Class Members perform, MGM Healthcare would not be able to complete its business objective of operating and managing nursing and assisted living facilities.

47.    Thus, Crawford's and the Putative Class Members' work is integral to MGM Healthcare's business objectives.

48.    In sum, MGM Healthcare employs all the patient care employees at its various facilities, including Crawford and the Putative Class Members.

49.    MGM Healthcare uniformly classifies these patient care employees (including Crawford and the Putative Class Members) as non-exempt and pays them on an hourly basis.

50.    While exact job titles and precise job duties may differ, these patient care employees are subjected to the same or similar illegal pay practices for similar work.

51.    For example, Crawford worked for MGM Healthcare as an LPN in St. Louis, Missouri from approximately April 2023 until June 2023.

52.    As an LPN, Crawford's primary responsibilities included providing direct patient care, such as monitoring residents, checking vitals, administering medications, charting all treatments, responding to emergencies, and generally assisting doctors and other nursing staff.

53.    Throughout her employment, MGM Healthcare classified Crawford as non-exempt and paid her on an hourly basis.

54.     Throughout her employment, MGM Healthcare subjected Crawford to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

55.     But throughout her employment, Crawford did not actually receive *bona fide* meal breaks.

56.     Crawford and the Putative Class Members performed their jobs under MGM Healthcare's supervision and use materials, equipment, and technology MGM Healthcare approves and supplies.

57.     MGM Healthcare required Crawford and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their patient care jobs.

58.     MGM Healthcare selects and controls the common systems and methods by which Crawford and the Putative Class Members were paid each pay period.

59.     MGM Healthcare required Crawford and the Putative Class Members to record their hours worked using MGM Healthcare's timeclock system.

60.     Further, MGM Healthcare subjected Crawford and the Putative Class Members to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

61.     Specifically, MGM Healthcare automatically deducted 30 minutes a day from Crawford's and the Putative Class Members' recorded work time and wages for so-called "meal breaks."

62.     MGM Healthcare automatically deducts this time regardless of whether Crawford and the Putative Class Members actually receive full, uninterrupted, 30-minute meal breaks.

63.     MGM Healthcare simply assumes Crawford and the Putative Class Members receive *bona fide* meal breaks each shift they work.

64.     But Crawford and the Putative Class Members do not actually receive *bona fide* meal breaks.

65.     Instead, MGM Healthcare requires Crawford and the Putative Class Members to remain on-duty and perform compensable work throughout their shifts.

66.     And MGM Healthcare continuously subjects Crawford and the Putative Class Members to work interruptions during their unpaid meal periods.

67.     Because of these constant work interruptions, Crawford and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

68.     Rather, during their unpaid "meal breaks," Crawford and the Putative Class Members are necessarily forced to substantially perform their regular patient care job duties and responsibilities.

69.     Thus, Crawford and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for MGM Healthcare's—not these employees'—predominant benefit.

70.     This unpaid time is compensable under the FLSA because MGM Healthcare knew, or should have known, that Crawford and the Putative Class Members: (1) were performing unpaid work during their "meal breaks," (2) were interrupted or subject to interruptions with work duties during any attempted meal period, (3) were not completely relieved of all duties during their "meal breaks," (4) entirely skipped the meal period due to work demands, (5) received meal periods less than 20 consecutive minutes, (6) were not free to engage in personal activities during their meal periods because of constant work interruptions, (7) remained on MGM Healthcare's premises or under MGM Healthcare's supervision, and/or (8) spent their unpaid meal periods substantially performing their regular patient care duties for MGM Healthcare's predominant benefit.

71.    MGM Healthcare fails to exercise its duty as Crawford's and the Putative Class Members' employer to ensure these employees are not performing work that MGM Healthcare does not want performed during their unpaid "meal breaks."

72.    And MGM Healthcare knows Crawford and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because MGM Healthcare expects and requires these employees to do so.

73.    In fact, Crawford and the Putative Class Members repeatedly complained to MGM Healthcare's management and their supervisors about being forced to work during their unpaid "meal breaks."

74.    Thus, MGM Healthcare requested, suffered, permitted, or allowed Crawford and the Putative Class Members to work during their unpaid "meal breaks."

75.    Despite accepting the benefits, MGM Healthcare does not pay Crawford and the Putative Class Members for the compensable work they perform during their automatically deducted "meal breaks."

76.    Thus, under MGM Healthcare's uniform automatic meal break deduction policy, Crawford and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" during workweeks in which they work more than 40 hours in violation of the FLSA.

77.    In addition to excluding time from these employees' wages for "meal breaks," MGM Healthcare also uniformly subjects Crawford and the Putative Class Members to its automatic rounding policy.

78.    Specifically, MGM Healthcare automatically rounds Crawford's and the Putative Class Members' recorded time punches to the nearest quarter hour in 7-minute increments for MGM Healthcare's—not these employees'—primary benefit.

79.     In fact, in conjunction with MGM Healthcare's automatic rounding policy, MGM Healthcare also prohibits Crawford and the Putative Class Members from clocking in and out for their shifts more than 7 minutes of their scheduled shift start and end times.

80.     By enforcing these policies together, MGM Healthcare ensures its automatic rounding policy *always* benefits MGM Healthcare—and *never* benefits Crawford and the Putative Class Members.

81.     Thus, under MGM Healthcare's uniform automatic rounding policy, Crawford and the Putative Class Members are denied overtime pay for all overtime hours worked during workweeks in which they work more than 40 hours in violation of the FLSA.

82.     Crawford worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

83.     Indeed, during the two-week pay period ending on May 20, 2023, Crawford worked 143.5 hours (63.5 of which were overtime hours)—**not** including the hours she worked during her unpaid meal breaks.

84.     Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

85.     Indeed, Crawford and the Putative Class Members typically worked 12-hour shifts for 5-7 days a week (or 60-84 hours).

86.     And Crawford and the Putative Class Members regularly are also required to work "off the clock" during their unpaid meal breaks to complete their patient care job duties and responsibilities for MGM Healthcare's predominate benefit.

87.     As a result, Crawford and the Putative Class Members routinely work more than 40 hours in a typical workweek.

88.     When Crawford and the Putative Class Members work more than 40 hours in a workweek, MGM Healthcare does not pay them overtime wages for all overtime hours worked

because MGM Healthcare fails to include time worked during "off the clock," unpaid, meal "breaks" in calculating the total number of hours worked in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

89.    Crawford incorporates all other paragraphs by reference.

90.    Crawford brings her claims as a collective action on behalf of herself and the Putative Class Members.

91.    The Putative Class Members were victimized by MGM Healthcare's automatic meal break deduction policy, which is in willful violation of the FLSA.

92.    Other Putative Class Members worked with Crawford and indicated they were paid in the same manner, performed similar work, and were subject to MGM Healthcare's same automatic meal break deduction policy.

93.    Based on her experience with MGM Healthcare, Crawford is aware MGM Healthcare's illegal practices were imposed on the Putative Class Members.

94.    The Putative Class Members are similarly situated in all relevant respects.

95.    Even if their precise job duties and locations might vary, these differences do not matter for the purposes of determining their entitlement to overtime.

96.    Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent collective treatment.

97.    Rather, the putative collective is held together by MGM Healthcare's uniform automatic meal break deduction policy, which systematically deprived Crawford and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek.

98.    MGM Healthcare's failure to pay overtime wages as required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Putative Class Members.

99.     MGM Healthcare's records reflect the number of hours the Putative Class Members recorded they worked each week.

100.     MGM Healthcare's records also show that it automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

101.     Likewise, MGM Healthcare's records show the specific time the Putative Class Members punched in and out for the shifts.

102.     And MGM Healthcare's records also show that it automatically rounded the Putative Class Members recorded time punches to the nearest quarter hour in 7-minute increments.

103.     The back wages owed to Crawford and the Putative Class Members can therefore be calculated using the same formula applied to the same records.

104.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to MGM Healthcare's records, and there is no detraction from the common nucleus of liability facts.

105.     Therefore, the issue of damages does not preclude collective treatment.

106.     Crawford's experiences are therefore typical of the experiences of the Putative Class Members.

107.     Crawford has no interest contrary to, or in conflict with, the Putative Class Members.

108.     Like each Putative Class Member, Crawford has an interest in obtaining the unpaid wages owed to them under federal law.

109.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

110.     Absent this collective action, many Putative Class Members likely will not obtain redress for their injuries, and MGM Healthcare will reap the unjust benefits of violating the FLSA.

111.    Further, even if some of the Putative Class Members could afford individual litigation against MGM Healthcare, it would be unduly burdensome to the judicial system.

112.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Putative Class Members' claims.

113.    The questions of law and fact that are common to each member of the Putative Class predominate over any questions affecting solely the individual members.

114.    Among the common questions of law and fact are:

a.    Whether MGM Healthcare engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

b.    Whether MGM Healthcare's automatic meal break deduction policy deprived Crawford and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA;

c.    Whether MGM Healthcare knew, or had reason to know, Crawford and the Putative Class Members were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid meal breaks in violation of the FLSA;

d.    Whether MGM Healthcare failed to pay Crawford and the Putative Class Members overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock" during their unpaid meal breaks, in violation of the FLSA;

e.    Whether MGM Healthcare's decision not to pay Crawford and the Putative Class Members overtime wages for all overtime hours worked was made in good faith; and

f.      Whether MGM Healthcare's FLSA violations were willful.

115.    Crawford knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

116.    As part of its regular business practices, MGM Healthcare intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Crawford and the Putative Class Members.

117.    MGM Healthcare's illegal meal break deduction policy deprived Crawford and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek, which they are owed under federal law.

118.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

119.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

120.    Those similarly situated employees are known to MGM Healthcare, are readily identifiable, and can be located through MGM Healthcare's business and personnel records.

### MGM HEALTHCARE'S FLSA VIOLATIONS WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF THE FLSA

121.    Crawford incorporates all other paragraphs by reference.

122.    MGM Healthcare knew it was subject to the FLSA's overtime provisions.

123.    MGM Healthcare knew the FLSA required it to pay employees, including the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

124.    MGM Healthcare knew the Putative Class Members were non-exempt employees entitled to overtime pay.

125.    MGM Healthcare knew the Putative Class Members were paid on an hourly basis.

126.    MGM Healthcare knew each Putative Class Members worked over 40 hours in at least one workweek during the three years before this Complaint was filed because MGM Healthcare required these employees to record their hours worked using its timeclock system.

127.    MGM Healthcare knew the FLSA required it to pay employees, including the Putative Class Members, for all hours these employees performed compensable work.

128.    MGM Healthcare knew that, as the Putative Class Members' employer, it had a duty to ensure these employees were not performing work "off the clock" (without pay) that MGM Healthcare did not want performed.

129.    MGM Healthcare knew it failed to provide the Putative Class Members with *bona fide*, uninterrupted meal breaks.

130.    MGM Healthcare knew the Putative Class Members did not actually receive *bona fide*, uninterrupted meal breaks.

131.    MGM Healthcare knew the Putative Class Members regularly worked during their unpaid meal breaks.

132.    MGM Healthcare knew it requested, suffered, permitted, or allowed the Puative Class Members to work during their unpaid meal breaks.

133.    MGM Healthcare knew the Puative Class Members regularly spent their unpaid meal breaks substantially performing their regular patient care job duties for MGM Healthcare's predominant benefit.

134.    Indeed, Putative Class Members complained to MGM Healthcare's management, HR, and/or their supervisors about being forced to work during their unpaid meal breaks.

135.    Thus, MGM Healthcare knew, should have known, or recklessly disregarded the fact that the Putative Class Members performed compensable work during their unpaid meal breaks.

15

136.    Nonetheless, MGM Healthcare automatically deducted 30 minutes a day from the Putative Class Members' recorded work time for meal breaks.

137.    In other words, MGM Healthcare knew, should have known, or recklessly disregarded the fact that it did not pay the Putative Class Members for all the hours they performed compensable work.

138.    MGM Healthcare's decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks was neither reasonable, nor was the decision to automatically deduct 30 minutes a day from the Putative Class Members' recorded work time for meal breaks made in good faith.

139.    MGM Healthcare's failure to pay the Putative Class Members overtime wages for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

140.    MGM Healthcare knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Crawford and the Putative Class Members of overtime wages for all hours worked after 40 in a workweek in violation of the FLSA.

141.    MGM Healthcare knew, should have known, or recklessly disregarded whether the conduct described in this Complaint violated the FLSA.

142.    Indeed, MGM Healthcare has been sued previously by employees for failing to pay overtime wages in violation of the FLSA and analogous state wage and hour laws. *See, e.g., Davis, et al. Midwest Geriatric Mgmt., LLC*, No. 5:18-CV-00594 (W.D. Okla.); *Cooper v. Midwest Geriatric Mgmt., LLC*, No. 5:17-CV-01245 (W.D. Okla.).

**CAUSE OF ACTION**
**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**

143.    Crawford incorporates all other paragraphs by reference.

144. Crawford brings her FLSA claim on behalf of herself and the Putative Class Members pursuant to 29 U.S.C. § 216(b).

145. MGM Healthcare violated, and is violating, the FLSA by employing non-exempt employees (Crawford and the Putative Class Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime at rates not less than 1.5 times their regular rates of pay.

146. MGM Healthcare's unlawful conduct harmed Crawford and the Putative Class Members by depriving them of the overtime wages they are owed.

147. Accordingly, Crawford and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

### JURY DEMAND

148. Crawford demands a trial by jury.

### RELIEF SOUGHT

Wherefore, Crawford, individually and on behalf of the Putative Class Members, requests:

    a.    An Order designating this lawsuit as a collective action and permitting the issuance of a notice to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

    b.    An Order finding MGM Healthcare liable for unpaid overtime wages due to Crawford and the Putative Class Members, plus liquidated damages in amount equal to their unpaid overtime wages;

    c.    Judgment awarding Crawford and the Putative Class Members all unpaid wages, liquidated damages, and any other penalties available under the FLSA;

d.       An Order awarding attorney's fees, costs, and expenses;

e.       Pre- and post-judgment interest at the highest applicable rates; and

f.       Such other and further relief as may be necessary and appropriate.

Dated: September 27, 2023.                    Respectfully submitted,

**BRUCKNER BURCH PLLC**

By: */s/ Rex Burch*
    Richard J. (Rex) Burch
    TX Bar No. 24001807
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

William C. (Clif) Alexander*
TX Bar No. 24064805
Austin W. Anderson*
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR CRAWFORD & THE PUTATIVE CLASS MEMBER**