**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CHELSEA CRAWFORD, Individually and for Others Similarly Situated, | Case No. 4:23-cv-1218-MAL |
| v. | FLSA Collective Action |
| MIDWEST GERIATRIC MANAGEMENT, LLC d/b/a MGM HEALTHCARE. | |

**MOTION TO APPROVE SETTLEMENT OF FLSA COLLECTIVE ACTION AND DISMISS WITH PREJUDICE**

Table of Authorities

Page(s)

**Cases**

*Allicks v. Omni Specialty Packaging, LLC,*
No. 4:19-CV-1038-DGK, 2021 WL 2188956 (W.D. Mo. May 28, 2021)...........................................13

*Barfield v. Sho-Me Power Elec. Co-op.,*
2015 WL 3460346 (W.D. Mo. June 1, 2015) ....................................................................................12

*Benson v. City of Lincoln,*
774 F. Supp. 3d 1046 (D. Neb. 2024)...............................................................................................14

*Bonetti v. Embarq Mgmt. Co.,*
715 F. Supp. 2d 1222 (M.D. Fla. 2009) .............................................................................................7

*Brooklyn Savs. Bank v. O'Neil,*
324 U.S. 697 (1945) ............................................................................................................................5

*Burnett v. Nat'l Ass'n of Realtors,*
No. 4:19-CV-00332-SRB, 2024 WL 2842222 (W.D. Mo. May 9, 2024) ............................................8

*Caligiuri v. Symantec Corp.,*
*855 F.3d 860 (8th Cir. 2017)*.........................................................................................9, 11, 12, 13

*Cohn v. Nelson,*
375 F. Supp. 2d 844 (E.D. Mo. 2005).................................................................................................5

*Feldman v. Star Trib. Media Co. LLC,*
No. 22-CV-1731 (ECT/TNL), 2024 WL 3026556 (D. Minn. June 17, 2024) .......................... 11, 13

*Grahovic v. Ben's Richardson Pizza Inc.,*
2016 WL 1170977 (E.D. Mo. Mar. 25, 2016) ....................................................................................7

*Grove v. Meltech, Inc.,*
No. 8:20CV193, 2022 WL 119180 (D. Neb. Jan. 12, 2022) ..............................................................6

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ..........................................................................................................................13

*Holden v. Burlington N., Inc.,*
665 F. Supp. 1398 (D. Minn. 1987)....................................................................................................7

*Huyer v. Buckley,*
*849 F.3d 395 (8th Cir. 2017)*...........................................................................................................12

*In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.,*
55 F.3d 768 (3d Cir.1995) ..................................................................................................................5

*In re Pork Antitrust Litig.,*
No. 18-CV-01776 (JRT-JFD), 2025 WL 2410294 (D. Minn. Aug. 13, 2025)...................................11

*In re Resideo Techs., Inc., Sec. Litig.,*
No. 19-CV-2863 (WMW/BRT), 2022 WL 872909 (D. Minn. Mar. 24, 2022)....................................14

*In re St. Paul Travelers Sec. Litig.,*
No. CIV. 04-3801 JRTFLN, 2006 WL 1116118 (D. Minn. Apr. 25, 2006)........................................14

*In re U.S. Bancorp Litig.,*
291 F.3d 1035 (8th Cir. 2002) ..........................................................................................................12

*In re UnitedHealth Grp. Inc. S'holder Derivative Litig.,*
631 F. Supp. 2d 1151 (D. Minn. 2009) ...............................................................................................8

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,*
364 F. Supp. 2d 980 (D. Minn. 2005) ...............................................................................................13

*Keil v. Lopez,*
    862 F.3d 685 (8th Cir. 2017) .................................................................................. 13, 14
*King v. Raineri Const., LLC,*
    No. 4:14-CV-1828 CEJ, 2015 WL 631253 (E.D. Mo. Feb. 12, 2015) ...................................6
*Melgar v. OK Foods,*
    902 F.3d 775 (8th Cir. 2018) ................................................................................... 5, 12
*Meller v. Bank of the W.,*
    2018 WL 5305562 (S.D. Iowa Sept. 10, 2018) ...........................................................passim
*Oliver v. Centene Corp.,*
    No. 4:21-CV-199 RLW, 2023 WL 3072651 (E.D. Mo. Apr. 25, 2023) ...........................................15
*PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.,* No.,
    418CV00368SMRHCA, 2023 WL 8522980 (S.D. Iowa Nov. 30, 2023) ...........................13, 14, 15
*Risch v. Natoli Eng'g Co., LLC,*
    No. 4:11CV1621 AGF, 2012 WL 4357953 (E.D. Mo. Sept. 24, 2012) ..................................7
*Sanderson v. Unilever Supply Chain, Inc.,*
    2011 WL 6369395 (W.D. Mo. Dec. 19, 2011) ...........................................................12
*Shackleford v. Cargill Meat Sols. Corp.,*
    2013 WL 937550 (W.D. Mo. Mar. 8, 2013) ...........................................................12
*Sporven v. Safe Haven Sec. Services, Inc.,*
    No. 8:20CV3032, 2021 WL 3172021 (D. Neb. July 27, 2021) ..........................................5
*Terry Bishop, DVM v. Delaval Inc.,*
    No. 5:19-CV-06129-SRB, 2022 WL 18542465 (W.D. Mo. June 7, 2022) ...........................11
*Tussey v. ABB, Inc.,*
    850 F.3d 951 (8th Cir. 2017) ...........................................................................11
*Walkinshaw v. CommonSpirit Health,*
    No. 4:19CV3012, 2022 WL 5255287 (D. Neb. Oct. 6, 2022) ..................................5, 6, 8, 11
*Yarrington v. Solvay Pharms., Inc.,*
    697 F. Supp. 2d 1057 (D. Minn. 2010) ...........................................................passim

Statutes

29 U.S.C. 216(b) ..................................................................................... 1, 12, 15

Other Authorities

4 Newbergf on Class Actions § 11.41...................................................................8

Table of Contents

1.  Introduction..................................................................................................................................1

2.  Procedural History.......................................................................................................................1

3.  Agreed Settlement.......................................................................................................................3

    A. Settlement administration. ....................................................................................................3

    B. Service payments. ...................................................................................................................4

    C. Release.......................................................................................................................................4

    D. Attorneys' fees and costs.......................................................................................................5

4.  Argument And Authorities.........................................................................................................5

    A. The settlement represents a resolution of a bona fide dispute.......................................6

    B. The settlement is fair, adequate, and equitable. ................................................................6

        1.  The stage of the litigation and extent of discovery support approval. ..............................7

        2.  The experience and competence of Counsel favor approval............................................7

        3.  The risks and uncertainties of continued litigation support the compromise.................8

        4.  The settlement was reached through arm's-length negotiation.........................................8

        5.  The settlement provides real and immediate benefits to the collective.............................9

    C. The proposed distribution plan is fair and adequate.......................................................9

    D. The requested service payments are reasonable and warranted. ...................................9

        1.  Crawford and Norton took concrete actions to protect the interests of the
            collective. ...........................................................................................................................10

        2.  The Plaintiff's efforts conferred substantial benefits on the collective.........................10

        3.  The time, effort, and risks assumed by the Plaintiffs further justify the awards............11

        4.  The requested service payments are proportional and consistent with awards
            approved in this Circuit.....................................................................................................11

    E. Plaintiff's Counsel's requested attorneys' fees and costs are reasonable and should be
        approved. ...............................................................................................................................12

5.  Conclusion .................................................................................................................................15

## 1. INTRODUCTION

Plaintiff Chelsea Crawford (Crawford or Plaintiff), and Defendant Midwest Geriatric Management, LLC, d/b/a MGM Healthcare (MGM or Defendant; together, the Parties) have reached a proposed settlement that resolves all wage and hour claims asserted in this Action on a collective basis on behalf of the Named Plaintiffs and Opt-in Plaintiffs (collectively, "Plaintiffs") who worked for MGM and received an automatic meal period deduction, were subject to MGM's automatic rounding policy, and/or received a non-discretionary bonus that was not included in the regular rate of pay for overtime purposes at any point in the past 3 years and opted-in to the collective. The Agreement contemplates a settlement under 29 U.S.C. §216(b). Because the proposed Agreement resolves all potential claims and satisfies the criteria for approval, Crawford respectfully requests the Court grant approval of the Agreement attached as Exhibit 1. Crawford conferred with MGM in the formation and submission of this memorandum and MGM does not oppose the motion.

## 2. PROCEDURAL HISTORY

Crawford filed suit on behalf of herself and others similarly situated on September 27, 2023, alleging MGM's pay practices violated the Fair Labor Standards Act (FLSA). ECF No. 1. She alleged MGM automatically deducted 30 minutes from the recorded work time of Healthcare Workers for meal breaks, but due to the nature of their jobs they were unable to receive an uninterrupted 30-minute meal break during their shifts. *Id.* at ¶¶ 3-9, 60-70. MGM refuted Crawford's allegations, arguing that its policies and practices required the accurate reporting of hours by all employees (including Healthcare Workers); that time records on which Healthcare Worker pay is based are accurate; and that it at all times properly paid its Healthcare Workers for all hours worked. ECF No. 13. Plaintiff's Counsel engaged in extensive discovery into MGM's alleged FLSA violations both before filing suit and after. Declaration of Michael Josephson, at ¶ 14. This investigation included interrogatories, document requests, and analysis of data compilations. *Id.*

The Parties stipulated to conditional certification of the collective on March 21, 2024. ECF No. 23. The Court conditionally certified the collective and approved a proposed notice plan on November 8, 2024. ECF No. 25. Four hundred and twenty-four (424) employees opted in to the suit during the Notice period. Decl. of Michael Josephson, at ¶ 17.

The Parties agreed to engage in confidential negotiations and in anticipation of mediation, both sides voluntarily exchanged a substantial amount of additional information necessary to perform a damages analysis. *Id.* at ¶¶ 14-16, 18-19. These exchanges allowed the Parties to evaluate the merits of their respective positions and to negotiate based on an informed understanding of the evidence. *Id.* at ¶¶ 20-21. Counsel's preparation for mediation also identified alleged regular rate and time-rounding and these claims were included in the settlement discussions. *Id.* at ¶ 20.

Plaintiff Norton filed a separate suit against MGM on June 5, 2025, alleging regular rate violations against herself and other Healthcare Workers. *Id.* at ¶ 29. Both parties were represented by the same counsel as the *Crawford* matter. *Id.*

On June 17, 2025, the Parties participated in a full-day in person mediation facilitated by experienced wage-and-hour mediator Frank Neuner. ECF No. 52. Although no agreement was reached that day, the discussions were productive and continued in the weeks that followed. *Id.* at ¶¶ 23-25.

On July 14, 2025, Crawford subsequently filed her Amended Complaint alleging automatic meal break deductions, automatic rounding policy, and/or received a bonus that was not included in the regular rate of pay for overtime purposes. ECF No. 55. Additionally, with the consent of Norton and the opt-ins for her case, her case was dismissed and all Norton plaintiffs were included in the *Crawford* matter and this settlement agreement. *Id.* ECF No. 62. During this time, the Parties continued to talk through extended, good-faith negotiations conducted at arm's length, and were able to reach a comprehensive settlement agreement in principle designed to fully and finally settle all

2

claims asserted in this case, including wage and hour claims that could have been pursued under the FLSA or applicable state or local law. *Id.* at ¶¶ 31-36.

All Parties agree that continuing the litigation would involve considerable risk, expense, and delay. *Id.* at ¶¶ 31-44. Proceeding to trial would require additional depositions, expert analysis, and prolonged motion practice. This would increase expenses to an untold degree for all Parties, and have an uncertain outcome. Accordingly, the settlement is in the best interests of all parties.

## 3. PROPOSED SETTLEMENT TERMS

Under the terms of the Agreement, MGM will establish a common settlement fund of $440,000.00 to resolve all claims asserted in this action. *See* Exhibit 1, Settlement Agreement, at §I ¶B. This fund will cover: (1) payments to participating collective members, (2) service payments to Crawford and Norton, and (3) reasonable attorneys' fees and costs. *Id.* at §I ¶¶C-F. The Gross Settlement is exclusive of 50% of the employer side taxes that MGM owes on the portion of the settlement classified as W-2 wages, which shall be paid by MGM in addition to the Gross Settlement Amount. *Id.* at §I ¶B.

### A. Settlement administration.

Within 14 days of Court approval, Plaintiff's Counsel will provide Defendant's Counsel with an Excel chart listing the names of the plaintiffs along with the allocation for each. *Id.* at § I ¶D. MGM will issue settlement payments within the latter of 14 days after this Agreement is approved by the Court, 21 days after the receipt of allocation information from Plaintiff's Counsel, or 14 days after receipt of an executed W-9 from Plaintiff's Counsel. *Id.*

Individual allocations will be determined by Plaintiff's Counsel based upon the number of weeks worked, hours of pay, and any other known relevant data points for the Representative Plaintiff and Opt-In Plaintiffs within the applicable limitations period. *Id.* at § I ¶C. This proportional formula ensures that payments reflect relative time worked and exposure to the challenged pay practices,

3

resulting in a fair and reasonable distribution among participants.

For tax purposes, each payment will be divided equally: fifty percent (50%) is designated as lost wages, subject to lawful withholdings and reported on an IRS Form W-2; and fifty percent (50%) is designated as liquidated damages and/or alleged interest. *Id.* at § I ¶(D)(i)(1). MGM will be responsible for calculating, withholding, and timely remitting and reporting all taxes to the appropriate taxing authorities. *Id.*

## B. Service payments.

The Parties' Settlement Agreement provides that Crawford and Norton should receive modest service payments in recognition of their efforts in advancing this case and to account for the additional general releases they are providing. These payments also reflect the time, responsibility, and risks each undertook in pursuing claims not only on their own behalf but for the benefit of the entire collective. Specifically, the Agreement provides service awards of $6,500.00 to Crawford and $2,500.00 to Norton. *Id.* at § I ¶F.

## C. Release.

The Settlement Agreement includes a release by the Opt-In Plaintiffs of all federal, state, and local wage-and-hour claims against MGM and the entities employing the Opt-In Plaintiffs (as identified in Exhibit A to the Settlement Agreement), that arose or could have arisen at any time before the signing of this Agreement. *Id.* at § I ¶G, § II ¶¶B-D. Crawford and Norton have agreed to execute general releases of all known and unknown claims against the Released Parties and the entities employing the Opt-In Plaintiffs (as identified in Exhibit B to the Settlement Agreement), consistent with the enhanced consideration they receive under the Agreement. *Id.* at § II ¶A. This release excludes claims for benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes, vested or accrued employee benefits under MGM's retirement plan, or the pursuit of any claims which by law cannot be waived by the signing of the Settlement

4

Agreement. *Id.*

### D. Attorneys' fees and costs.

Under the Settlement Agreement and subject to Court approval, Plaintiff's Counsel will receive $154,000.00 in attorneys' fees and $12,759.03 in reimbursement of litigation expenses *Id.* at § I ¶E.

### E. Distribution of settlement checks.

If the Court approves the Parties' Settlement, MGM will issue and send settlement payments via USPS within the latter of 14 days after this Agreement is approved by the Court, 21 days after the receipt of allocation information from Plaintiff's Counsel, or 14 days after receipt of an executed W-9 from Plaintiff's Counsel. *Id.* at § I ¶D(i). The checks will not include an expiration date.

## 4. ARGUMENT AND AUTHORITIES.

District courts "should approve a fair and reasonable settlement [of a collective action] if it was reached as a result of contested litigation to resolve a bona fide dispute under the FLSA." *Walkinshaw v. CommonSpirit Health*, No. 4:19CV3012, 2022 WL 5255287, at *4 (D. Neb. Oct. 6, 2022) (quoting *Sporven v. Safe Haven Sec. Services, Inc.*, No. 8:20CV3032, 2021 WL 3172021, at *2 (D. Neb. July 27, 2021)). In the Eighth Circuit there is a "tradition of encouraging settlement between private parties." *Melgar v. OK Foods*, 902 F.3d 775, 778 (8th Cir. 2018). And, "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v. Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)). Additionally in this Circuit, court approval is generally required for any compromise of wage claims to ensure that the agreement represents a fair and reasonable resolution of a bona fide dispute. *Walkinshaw*, 2022 WL 5255287, at *4.

### A. The settlement represents a resolution of a bona fide dispute.

"A bona fide wage dispute exists when an employee and an employer disagree 'with respect to coverage or amount due under the [FLSA].'" *Id.* (quoting *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 703 (1945)). Here, the Parties vigorously disputed both liability and damages. Crawford alleged MGM required healthcare workers to perform compensable work "off-the-clock" and failed to pay overtime wages at the required rate—based on all remuneration—for all overtime hours worked, in violation of the FLSA. ECF No. 55. MGM denied those claims, asserted multiple affirmative defenses, and contested whether collective treatment was appropriate. ECF No.57. MGM maintained that all compensable time was recorded and paid, that any unpaid time was *de minimis*, that liquidated damages were not warranted, and that Plaintiff's claims were subject to shorter limitations periods. *Id.*

These facts demonstrate that the settlement resolves a genuine controversy concerning liability and damages under the FLSA and therefore qualifies as a bona fide dispute subject to judicial approval. Courts find that "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation." *Walkinshaw*, 2022 WL 5255287, at *4 (quoting *Grove v. Meltech, Inc.*, No. 8:20CV193, 2022 WL 119180, at *2 (D. Neb. Jan. 12, 2022)). Accordingly, the Court should approve this Settlement as an agreed-upon resolution of a bona fide dispute.

### B. The settlement is fair, adequate, and equitable.

In the Eighth Circuit, district courts determine whether an FLSA settlement is fair and reasonable by considering five factors: (1) the stage of the litigation and the amount of discovery exchanged; (2) the experience and ability of counsel; (3) the probability of Plaintiff's success on the merits balanced against the risks of continued litigation; (4) the presence or absence of collusion or overreaching by the employer; and (5) the degree to which the settlement was the product of arm's-length negotiations. *King v. Raineri Const., LLC*, No. 4:14-CV-1828 CEJ, 2015 WL 631253, at *2-3

6

(E.D. Mo. Feb. 12, 2015). Here, each factor weighs strongly in favor of approval.

### 1. The stage of the litigation and extent of discovery support approval.

This settlement was reached only after the Parties had engaged in substantial investigation and discovery (including voluminous amounts of payroll records and time data produced by MGM as well as records produced by class members, and class member interviews conducted by Class Counsel), ensuring that the compromise was based on a well-developed factual record rather than speculation. Decl. of Josephson, at ¶¶ 14-16, 19-26. Both sides had ample opportunity to evaluate the strengths and weaknesses of their respective positions. *Id.* The depth of discovery distinguishes this case from early-stage settlements and strongly supports a finding that the resolution was informed and fair. *See, e.g., Meller v. Bank of the W.*, 2018 WL 5305562, at *6 (S.D. Iowa Sept. 10, 2018), report and recommendation adopted, No. 3:18-CV-00033-JAJ, 2018 WL 5305556 (S.D. Iowa Oct. 1, 2018) (approving settlement due, in part, to the "thorough investigation conducted by counsel" and the review of documents); *Risch v. Natoli Eng'g Co., LLC*, No. 4:11CV1621 AGF, 2012 WL 4357953, at *3 (E.D. Mo. Sept. 24, 2012) (approving settlement following "extensive fact discovery, [and the] exchanging and reviewing significant numbers of documents[.]").

### 2. The experience and competence of Counsel favor approval.

Both sides were represented by experienced and highly capable wage-and-hour counsel. Plaintiffs were represented by Josephson Dunlap LLP and Bruckner Burch PLLC, firms that litigate FLSA collective actions nationwide and have obtained numerous court-approved settlements in complex "off-the-clock" and overtime cases. Decl. of Josephson, at ¶¶ 3-7. Defense counsel, Ogletree Deakins, Nash, Smoak & Stewart, P.C., is likewise a leading management-side firm with extensive experience defending employers in collective and class wage cases. *Id.* at ¶ 8. Representation by experienced counsel, as was the case here, heavily favors the finding of fairness in settlements. *Grahovic v. Ben's Richardson Pizza Inc.*, No. 4:15CV01659 NCC, 2016 WL 1170977, at *2 (E.D. Mo. Mar. 25,

7

2016) ("If the parties are represented by competent counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable.") (quoting *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1227 (M.D. Fla. 2009)).

### 3. The risks and uncertainties of continued litigation support the compromise.

"Integral to the consideration of the strengths of a case on the merits is a consideration of the risks accompanying continuation of the litigation." *Holden v. Burlington N., Inc.*, 665 F. Supp. 1398, 1408 (D. Minn. 1987). Although Plaintiffs believe in the strength of their claims, continued litigation presented real risks at every stage. If the case had not settled, MGM likely would have moved for decertification. *See* ECF No. 54. Both sides would likely file (and be forced to respond to) dispositive motions. *Id.* Moreover, preparing for and participating in a trial is a lengthy and expensive process that both parties would endure with no guarantee the outcome would be in their favor, or even that a favorable outcome would be better than the Settlement amount. The losing party would also likely appeal, costing additional time and money. The settlement eliminates these uncertainties and delivers prompt, certain recovery to hundreds of employees. When a settlement "is more beneficial to the FLSA Plaintiffs and the Defendants, given the time, expense, and uncertainty of further litigation … [it] obviates the real risks to both parties that are inherent to the continued litigation of the matter." *Walkinshaw*, 2022 WL 5255287, at *5. Accordingly, such a settlement "is entitled to a presumption of fairness." *Id.*

### 4. The settlement was reached through arm's-length negotiation.

The record reflects that the settlement is the product of informed, adversarial negotiation and there was no collusion. *See generally* Decl. of Josephson. The Parties participated in full-day mediation before an experienced wage-and-hour mediator and continued to exchange proposals thereafter until all material terms were finalized. *Id.* at ¶¶ 23-28. Courts favor settlement when "[t]he proposed settlement was forged in arm's length negotiations and aided by an experienced, independent

8

mediator." *In re UnitedHealth Grp. Inc. S'holder Derivative Litig.*, 631 F. Supp. 2d 1151, 1158 (D. Minn. 2009). And, courts "adhere to 'an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.'" *Burnett v. Nat'l Ass'n of Realtors*, No. 4:19-CV-00332-SRB, 2024 WL 2842222, at *4 (W.D. Mo. May 9, 2024) (quoting 4 Newberg on Class Actions § 11.41). Accordingly, the arm's length negotiations support approval.

### 5. The settlement provides real and immediate benefits to the collective.

Finally, the settlement confers immediate, tangible monetary relief on all eligible employees. Each participant will receive a direct payment based on weeks worked during the covered period, hours of pay, and any other known relevant data points. Ex. 1 §1 ¶C. The formula ensures proportionality among participants and avoids windfalls or inequities. Without settlement, many collective members might receive no recovery at all due to the practical difficulty and expense of individual litigation. Prompt distribution of settlement funds thus serves both the FLSA's purposes and judicial economy.

### C. The proposed distribution plan is fair and adequate.

The Settlement Agreement includes a proposed plan for distribution of settlement payments to all eligible Collective Members that is fair, accurate, and procedurally sound. Under the Settlement Agreement, Plaintiff's counsel will calculate the correct allocations of funds for each opt-in based on number of weeks worked, hours of pay, and any other relevant data points. Ex. 1 §1 ¶C. The checks will be mailed by MGM. *Id.* at ¶D. Accordingly, the process will be quick and efficient, and each plaintiff will fairly receive a portion of the net settlement fund based upon the relative extent of lost wages as compared to the other opt-in members.

### D. The requested service payments are reasonable and warranted.

The Eighth Circuit recognizes that reasonable incentive payments are appropriate to

compensate class or collective representatives for the personal sacrifices they undertake to protect the rights of others. *Caligiuri v. Symantec Corp.,* 855 F.3d 860, 867–68 (8th Cir. 2017). Courts often grant these awards to "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Id.* (quoting *Yarrington v. Solvay Pharms., Inc.*, 697 F. Supp. 2d 1057, 1068 (D. Minn. 2010)). Courts in this Circuit typically evaluate the reasonableness of a requested service payment by considering: (1) the actions the plaintiffs took to protect the interests of the collective; (2) the degree to which those actions benefited the collective; and (3) the amount of time and effort the plaintiffs expended in pursuing the litigation. *Id.* at 867. All three factors strongly support the requested awards.

**1. Crawford and Norton took concrete actions to protect the interests of the collective.**

Crawford served as the driving force behind this litigation. Before filing suit, she provided detailed factual information that allowed counsel to investigate and substantiate the overtime and off-the-clock claims. Decl. of Josephson, at ¶ 10. She remained actively engaged throughout the case, assisting in the preparation of the Complaint, and producing documents. *Id.* at ¶14. Norton provided similar information to Counsel before the filing of her case and was essential in the decision-making process to combine her claims and opt-in plaintiffs into the Crawford matter. These actions significantly aided resolution for the collective as a whole. *See generally id.*

**2. The Plaintiffs' efforts conferred substantial benefits on the collective.**

Crawford and Norton's efforts led directly to a meaningful recovery for hundreds of current and former employees. Through their participation in discovery and mediation, they enabled Plaintiff's Counsel to present a comprehensive factual record that facilitated a favorable, negotiated resolution. *See generally* Decl. of Josephson. Because of their involvement, the settlement secures significant monetary relief for every eligible employee without requiring further litigation or individual claims. Such outcomes represent precisely the type of collective benefit that justifies modest service

10

enhancements. *Yarrington*, 697 F. Supp. 2d at 1069.

### 3. The time, effort, and risks assumed by the Plaintiffs further justify the awards.

Both Crawford and Norton undertook significant time commitments to advance this case. They collected and reviewed records and stayed in regular communication with counsel over the course of more than two years of litigation. In addition to expending time, both Plaintiffs assumed the reputational risk inherent in wage-and-hour litigation, risking strained professional relationships or future employment opportunities. Courts within this Circuit and beyond have repeatedly found that such risks support incentive payments far greater than those requested here. *See Meller*, 2018 WL 5305562, at *8 (noting the most significant factor for service awards is "the risks each of the plaintiffs took … Each plaintiff faces the risk of retaliation from their current employers, [and] the potential of being blacklisted by future employers, placing their ability to secure future employment at risk."); *Yarrington*, 697 F. Supp. 2d at 1069 (finding service awards were justified based on the "considerable effort and risk undertaken to obtain the outstanding result for the Class.").

### 4. The requested service payments are proportional and consistent with awards approved in this Circuit.

The requested service awards of $6,500 and $2,500 are well within the standard awards granted in this Circuit. *See, e.g., Feldman v. Star Trib. Media Co. LLC*, No. 22-CV-1731 (ECT/TNL), 2024 WL 3026556, at *8 (D. Minn. June 17, 2024) (approving a $5,000 service award); *Walkinshaw v. CommonSpirit Health*, No. 4:19CV3012, 2023 WL 1995281, at *5 (D. Neb. Feb. 14, 2023) (approving service awards of $8,000 to each of seven named plaintiffs); *Meller*, 2018 WL 5305562, at *8 (approving service awards of $8,000 to each of four named plaintiffs).

Indeed, the Eighth Circuit has affirmed service awards in much higher amounts where the representatives meaningfully contributed to the case. *See Caligiuri*, 855 F.3d at 868 (approving $10,000 awards in $60 million settlement); *Tussey v. ABB, Inc.*, 850 F.3d 951, 961-62 (8th Cir. 2017) (affirming $25,000 awards); *In re Pork Antitrust Litig.*, No. 18-CV-01776 (JRT-JFD), 2025 WL 2410294, at *4 (D.

Minn. Aug. 13, 2025) (approving $25,000 service awards to each of three named plaintiffs); *Terry Bishop, DVM v. Delaval Inc.*, No. 5:19-CV-06129-SRB, 2022 WL 18542465, at *3 (W.D. Mo. June 7, 2022) (approving service awards of $50,000 to each of four plaintiffs, $25,000 to each of two plaintiffs, and $10,000 for one additional plaintiff). Accordingly, the combined total here of $9,000 is well within the range deemed reasonable and the Court should approve the requested service awards.

### E. Plaintiff's Counsel's requested attorneys' fees and costs are reasonable and should be approved.

The FLSA expressly mandates that prevailing plaintiffs recover reasonable attorneys' fees and litigation costs. *See* 29 U.S.C. § 216(b) ("The court… shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). In the Eighth Circuit, courts evaluating fee requests in FLSA collective settlements apply either the lodestar or percentage-of-the-benefit method. *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017). Where, as here, a common fund is created for the benefit of a defined group of employees, the percentage-of-the-benefit approach is most appropriate. *Id*; *see also Caligiuri*, 855 F.3d at 866.

Under this approach, a 35% award the total recovery as attorneys' fees is typical, plus reimbursement of reasonable out-of-pocket expenses. *See In re U.S. Bancorp Litig.,* 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming award of 36%); *Yarrington,* 697 F. Supp. 2d at 1061 (recognizing that awards up to 36% are "in line with the range of fees approved by the Eighth Circuit"); *Barfield v. Sho-Me Power Elec. Co-op.,* 2015 WL 3460346, at 4 (W.D. Mo. June 1, 2015) (approving one-third of common fund as reasonable fee); *Meller*, 2018 WL 5305562, at *9 (approving 33.3%); *Shackleford v. Cargill Meat Sols. Corp.*, 2013 WL 937550, at 2 (W.D. Mo. Mar. 8, 2013) (same); *Sanderson v. Unilever Supply Chain, Inc.*, 2011 WL 6369395, at 2 (W.D. Mo. Dec. 19, 2011) (awarding 33.78%).

Accordingly, the requested fee of $154,000.00, representing thirty-five percent (35%) of the $440,000.00 common fund, plus reimbursement of $12,759.03 in litigation costs, is well within the

typical range of this Circuit and reflects the substantial result achieved for the collective, the contingent nature of the representation, and the efficiency with which this matter was resolved. The settlement provides meaningful monetary relief to a large group of employees while conserving judicial resources and avoiding the risks inherent in continued litigation.

The Eighth Circuit has made clear that when parties negotiate attorneys' fees as part of an FLSA settlement, the Court's review should be deferential. *Melgar*, 902 F.3d at 779. As the Court explained, "any required review by the district court [of the agreed-upon attorneys' fees] is light," and the award should be approved so long as it falls within the range of reasonableness. *Id.* at 780. The fee agreement here resulted from arm's-length negotiation between experienced counsel after mediation and extensive discovery. Decl. of Josephson, at ¶ 25. It reflects the Parties' informed judgment regarding fair compensation for the work performed and the risk undertaken. *Id.* at ¶¶ 9-36. Nothing in the record suggests collusion or disproportionate benefit to counsel. *Id.* The Court should therefore defer to the Parties' agreement and approve the negotiated fee and cost amounts.

Moreover (and solely for the purposes of cross-checking), the attorney lodestar in this case is approximately 1.54. Exhibit 2, Attorney Work Hours; Decl. of Josephson, at ¶ 41. Courts in this Circuit find "[t]he lodestar cross-check … multiplier need not fall within any pre-defined range, so long as the court's analysis justifies the award, [for example] when the multiplier is in line with multipliers used in other cases." *Yarrington*, 697 F. Supp. 2d at 1065 (quoting *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 999 (D. Minn. 2005)). Courts have considered multiple factors, including the risk counsel took in taking a case on a contingency basis and the amount of work completed by counsel. *Id.* Here, Counsel undertook significant risk in accepting this case and the lodestar multiplier accurately reflects those risks.

The requested 1.54 multiplier is well within the standard routinely awarded in this Circuit; indeed, "[t]he Eighth Circuit has found a multiplier as high as 5.3 to be reasonable." *PHT Holding II*

13

*LLC v. N. Am. Co. for Life & Health Ins.*, No. 418CV00368SMRHCA, 2023 WL 8522980, at *7 (S.D. Iowa Nov. 30, 2023). *See also Feldman*, 2024 WL 3026556, at *7 (finding "[a] multiplier of 2.97 is within a reasonable range for a class settlement in this Circuit"); *Allicks v. Omni Specialty Packaging, LLC*, No. 4:19-CV-1038-DGK, 2021 WL 2188956, at *3 (W.D. Mo. May 28, 2021) (a multiplier of 3.3 "is not unreasonable"); *Caligiuri*, 855 F.3d at 860 (affirming a district court's finding that a multiplier between two and five is within range of those common in Eighth Circuit); *Keil v. Lopez*, 862 F.3d 685, 702 (8th Cir. 2017) (affirming an awarded multiplier of 2.7); *Yarrington*, 697 F. Supp. 2d at 1065 (approving a multiplier of 2.26); *In re Xcel*, 364 F. Supp. 2d at 999 (approving a 4.7 multiplier); *In re St. Paul Travelers Sec. Litig.*, No. CIV. 04-3801 JRTFLN, 2006 WL 1116118, at *1 (D. Minn. Apr. 25, 2006) (approving a multiplier of 3.9). Moreover, the lodestar will continue to decline as Plaintiff's counsel "continue to commit substantial time and resources after final approval" in handling all issues required to close out the case. *Yarrington*, 697 F. Supp. 2d at 1069 n.2.

Ultimately, the most critical factor considered when awarding attorneys' fees is the degree of success obtained by Plaintiff's Counsel. *PHT Holding II*, 2023 WL 8522980, at *9. When plaintiffs prevail on even one claim that is "at the heart" of their case, then the "degree of success is significant." *Benson v. City of Lincoln*, 774 F. Supp. 3d 1046, 1094 (D. Neb. 2024). Here, Plaintiff's Counsel has negotiated a resolution of all claims in not just the original Crawford matter but the Norton matter as well, making this a highly successful settlement.

In addition, the settlement amount represents approximately 36% of the back wages owed to the opt-in employees with a three-year lookback period, or approximately 47% of the back wages owed with a two-year lookback period. Decl. of Josephson, at ¶ 31. This is well within the range considered highly successful for settlements in this Circuit. *See Meller*, 2018 WL 5305562, at *6 (approving a settlement comprising approximately one third of the class's lost wages and noting "[t]he settlement [amount] represents a substantial recovery weighed against the risk of losing class

14

certification, having a collective action decertified, losing on the merits and losing on appeal."). *See also Keil*, 862 F.3d at 696 (approving a settlement of 27% of the best possible recovery); *In re Resideo Techs., Inc., Sec. Litig.*, No. 19-CV-2863 (WMW/BRT), 2022 WL 872909, at *3 (D. Minn. Mar. 24, 2022) (finding a settlement of only 10 percent of the maximum recoverable damages was "adequate relief."). Accordingly, the recovery achieved by Plaintiff's Counsel in this case reflects a high degree of success and supports approving the requested attorney fees.

In addition to attorney fees, Plaintiff's Counsel seeks reimbursement of $12,759.03 in actual out-of-pocket expenses incurred in litigating and resolving this matter. Ex. 1 § I.E; Exhibit 3, Attorney Expenses. These costs include filing fees, travel, postage, mediation expenses, and other necessary expenditures routinely approved in FLSA litigation. Such reimbursement is explicitly authorized by statute. *See* 29 U.S.C. § 216(b). In the Eighth Circuit, expenses such as these are considered "reasonable and of the kind typically reimbursed from a settlement fund." *Oliver v. Centene Corp.*, No. 4:21-CV-199 RLW, 2023 WL 3072651, at *3 (E.D. Mo. Apr. 25, 2023). Moreover, courts in this Circuit agree that "[e]xpenses which are reasonably and necessarily incurred in prosecuting a case should be 'reimbursed proportionately by those class members who benefit by the settlement.'" *PHT Holding II*, 2023 WL 8522980, at *9 (quoting *Yarrington*, 697 F. Supp. 2d at 1067). Accordingly, the Court should approve Plaintiff's request for $12,759.03 in costs.

**5. CONCLUSION**

WHEREFORE, Plaintiffs respectfully request that the Court GRANT Plaintiff's Unopposed Motion for Approval of FLSA Collective Action Settlement and dismiss this action with prejudice. For the convenience of the Court, a proposed Order is attached hereto as Exhibit 4.

Dated: February 16, 2026

Respectfully Submitted,

By: */s/ Travis J. Grefenstette*
**Michael A. Josephson**
Texas Bar No. 24014780
**Andrew W. Dunlap**
Texas Bar No. 24078444
**Travis J. Grefenstette**
Texas Bar No. 24120866
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
tgrefenstette@mybackwages.com

**Richard J. (Rex) Burch**
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**COUNSEL FOR PLAINTIFF AND PUTATIVE COLLECTIVE MEMBERS**

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2026, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, and therefore, will be transmitted to all counsel of record by operation of the Court's CM/ECF system.

*/s/ Travis J. Grefenstette*
Travis J. Grefenstette

16