**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CHELSEA CRAWFORD, Individually and for Others Similarly Situated,<br><br>     *Plaintiff,*<br><br>v.<br><br>MIDWEST GERIATRIC MANAGEMENT, LLC d/b/a MGM HEALTHCARE,<br><br>     *Defendant.* | No. 4:23-cv-01218-MAL |

**<u>MEMORANDUM & ORDER</u>**

Before the Court is Parties Motion to Approve Settlement of FLSA Collective Action (Doc. 68).  For the following reason the Motion is **GRANTED**, the settlement terms are approved, and the above-captioned action is dismissed with prejudice.

## I.     Facts and Background

Chelsea Crawford filed suit against her former employer MGM Healthcare on behalf of herself and others similarly situated on September 27, 2023 (Doc. 1).  She alleged MGM automatically deducted thirty minutes a day from employees' recorded work time for "meal breaks," but that class members did not actually receive *bona fide* meal breaks.  *Id.* at ¶¶ 5–6.  Jane Norton filed a separate suit against MGM on June 5, 2025, alleging that MGM failed to pay overtime wages.  (Doc. 68-5 ¶ 29); *Norton v. Midwest Geriatric Management, LLC*, 4:25-cv-00827-CMS (Doc. 1).  Due to the similarity of the cases, and with consent of Plaintiffs in this case, the Norton matter was dismissed, and all seventeen *Norton* Plaintiffs were included as plaintiffs in this case (Doc. 68-5 ¶ 29).

1

At this point, Plaintiffs and Defendant have reached a proposed settlement, which they submitted to the Court for approval (Doc. 68-1 at 1). The terms of the settlement include dismissal with prejudice by Plaintiffs and payment of $440,000 by Defendant MGM. *Id.* at 3. This amount is referred to as the "Maximum Gross Settlement," but the amount is exclusive of fifty percent of the employer-side taxes that MGM owes on the portion of the settlement classified as W-2 wages, which MGM shall pay in addition to the $440,000 amount. *Id.* Parties agree that Plaintiffs' Counsel will seek, and MGM will not oppose, approval of $154,000 in attorneys' fees and $12,759.03 in litigation costs for a total attorneys' fees amount of $166,759.03. *Id.* at 5. The Agreement also provides a service payment to Crawford for $5,000 and to Norton for $2,500. *Id.* By signing or cashing their settlement checks, opt-in Plaintiffs release MGM from wage and hour claims, and Crawford and Norton release MGM from all potential claims. *Id.* at 5–6. The Agreement provides that Plaintiff and Plaintiffs' Counsel shall be solely responsible for allocating the Net Settlement Fund among Representative Plaintiff and the opt-in Plaintiffs and will do so based upon the number of weeks worked, hours of pay and any other known relevant data points. *Id.* at 4.

## II.   Legal Standard

The Eighth Circuit has not resolved whether private settlements over FLSA claims require district court approval but has "assumed[d] without deciding that the district court has a duty to exercise some level of review of the Agreement and the attorneys' fee award." *Melgar v. OK Foods*, 902 F.3d 775, 779 (8th Cir. 2018). District courts in this Circuit—before approving a settlement agreement in a case brought under § 216(b) of the Fair Labor Standards Act—must determine that: (1) the litigation involves a *bona fide* dispute, and (2), the proposed settlement is fair and equitable to all parties. *Fry v. Accent Mktg. Servs., L.L.C.*, 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014); *Brown v. Reddy Ice Corp.*, 2016 WL 2930933, at *3 (E.D. Mo. May 19, 2016). "If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement in order to promote the

2

policy of encouraging settlement of litigation." *Grove v. Meltech, Inc.*, 2022 WL 119180, at *2 (D. Neb. Jan. 12, 2022). "Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in an arms' length settlement as indicia of fairness." *Id.*

### III.   Application of Law to Facts

#### A. The settlement represents the resolution of a *bona fide* dispute.

"A bona fide wage dispute exists when an employee and an employer disagree 'with respect to coverage or amount due under the [FLSA].'" *Walkinshaw v. CommonSpirit Health*, 2022 WL 5255287, at *4 (D. Neb. Oct. 6, 2022) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 703 (1945). Here, the requirement of a *bona fide* dispute is satisfied. Plaintiffs and Defendant disputed both liability and damages. Crawford alleged that MGM required healthcare workers to perform compensable work off-the-clock and failed to pay overtime wages in violation on the FLSA (Doc. 55 at ¶¶ 30, 41). MGM denied those claims and asserted affirmative defenses (Doc. 57 at ¶¶ 30, 41). These facts represent a *bona fide* dispute of liability and damages.

#### B. The settlement is fair and equitable

To determine whether an FLSA settlement is fair and equitable to all parties, the district court may consider a multitude of factors, including the following:

(1) the stage of the litigation and the amount of discovery exchanged,
(2) the experience of counsel,
(3) the probability of the plaintiff's success on the merits,
(4) any overreaching by the employer in the settlement negotiations, and
(5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case.

*Johnson v. Himagine Sols., Inc.*, 2021 WL 2634669, at *4 (E.D. Mo. June 25, 2021).

#### 1.  The stage of litigation and extent of discovery

This factor tips in favor of approving the settlement. Parties engaged in substantial investigation and discovery (Doc. 68-5 ¶¶ 14–16). This amount of discovery was "a sufficient amount … for the parties to understand the potential

recovery and relative risks of proceeding to trial with their claims," yet "not so advanced that the parties will not realize significant benefits by settling before filing motions for summary judgment and trial." *King v. Raineri Const., LLC*, 2015 WL 631253, at *3 (E.D. Mo. Feb. 12, 2015) (quoting *Fry v. Accent Mktg. Servs., L.L.C.*, 2014 WL 294421, at *1 (E.D. Mo. Jan. 27, 2014)). *See* Doc. 68-5 ¶¶ 21–24 ("Both Parties were able to fully evaluate the merits of their respective positions due to the extensive amount of information and evidence exchanged prior to beginning mediation"; "Given the wealth of information acquired by Plaintiff's Counsel as to the pay practices at issue in this case, there is no doubt that Plaintiff's Counsel gathered sufficient information to adequately asses the liability issues and damages at stake in this case.").

### 2. The experience of counsel

This factor tips in favor of approving the settlement. Plaintiffs were represented by firms that litigate FLSA collective actions through counsel that litigate FLSA claims (Doc. 68-5 ¶¶ 3–7). Defendants were represented by one of the largest labor and employment firms with extensive experience in collective actions and defending FLSA violation allegations. *Id*. at ¶ 8.

### 3. The probability of Plaintiffs' success on the merits

This factor is neutral. Plaintiffs attest that "while they believe in the strength of their claims, continued litigations presented real risks at every stage." (Doc. 68, at 12; *see also* Doc. 68-5 ¶¶ 21–22). Parties state that if the case had not settled, MGM likely would have moved for decertification, both sides would likely have filed dispositive motions, and the losing party would likely have appealed (Doc. 68 at 12).

### 4. Any overreaching by the employer in settlement negotiations

This factor tips in favor of approving the settlement. The terms of the settlement do not suggest an overreach by MGM. The Settlement Agreement gross settlement amount represents approximately 35.64% of the estimated back wages owed for the prior three years, or 46.59% of the back wages owed for two years based

on Plaintiff's best-case-scenario (Doc. 68-5 ¶ 31–32).  Parties reached a settlement after a settlement conference with an experienced wage and hour mediator.  *Id.* at ¶ 18.  Parties assert that for claims like this—where plaintiffs allege they worked more hours than are reflected in defendant's timekeeping record—recovery would require complete success on certification through trial.  *Id.* at ¶ 32.  Plaintiffs also believed that "[b]ased on a review of the documents produced by MGM and interviews with our clients, there was a substantial risk that MGM would prevail on its theory that Plaintiffs were properly compensated under the FLSA…."  *Id.* at ¶ 22.  Given this risk, the Court does not believe MGM has overreached in settlement negotiations.  The Court finds no evidence of overreaching on the part of MGM, particularly in light of Plaintiffs' counsel in this area and the fact parties reached this settlement after a mediation conference, suggesting an absence of overreach.  *See Johnson*, 2021 WL 2634669 at *5 (no reason to believe overreach in light of Plaintiffs' experienced counsel and settlement occurring after mediation with experienced wage and hour mediator).

> ### 5. Whether settlement is the product of arm's length negotiations between represented parties based on the merits of the case.

This factor tips in favor of approving the settlement.  The Parties assert that "[t]he record reflects that the settlement is the product of informed, adversarial negotiation and there was no collusion." (Doc. 68 at 8; Doc. 68-5 at ¶ 30).  Parties engaged in full-day mediation and continued to exchange proposals afterward until all material terms were finalized (Doc. 68-5 ¶¶ 23–28).  The Court has no reason to believe the settlement is not a product of arm's length negotiations.  Thus, for the above reasons and taking into account the presumption in favor of finding settlement agreements fair, the Court finds the settlement is fair and equitable to all parties.

### C. Proposed distribution plan

The Court finds the proposed distribution plan is fair and adequate.  The settlement agreement prescribes that Plaintiff's counsel will calculate the allocation

of funds for each opt-in plaintiff based on number of weeks worked, hours of pay, and any other relevant data points, and MGM will mail checks (Doc. 68-1 at 4).

### D. The proposed service payments

The Court next considers the reasonableness of the requested service payments. The proposed settlement awards of $5,000 to Representative Crawford and $2,500 to Representative Norton for their efforts to procure this litigation (Doc. 68-1 at 5). These payments are reasonable.

In considering whether service payments are warranted, district courts have considered 1) actions plaintiff took to protect the class's interests, 2) the degree to which the class benefited from those actions, and 3) the amount of time and effort the plaintiff expended in pursuing litigation. *Johnson*, 2021 WL 2634669 at *5 (quoting *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002)). "Service awards, or incentive payments, are routinely awarded in FLSA collection actions." *Netzel v. W. Shore Grp., Inc.*, 2017 WL 1906955, at *7 (D. Minn. May 8, 2017) (collecting cases).

Considering the above factors, the Court finds the service payments are fair. Crawford was the driving force behind the litigation, and prior to filing her complaint, attorneys "spent considerable time coordinating with and interviewing her, investigating the veracity of her allegations…." (Doc. 68-5 ¶ 10). And both Crawford and Norton assumed reputational risk inherent in wage-and-hour litigation. Finally—unlike other plaintiffs—Crawford and Norton agreed to a general release, and the service payment is consideration for this general release (Doc. 68-5 ¶ 46).[1] The Court finds Crawford's $5,000 award and Norton's $2,500 award appropriate. *Cf. Caligiuri v. Symantec Corp.*, 855 F.3d 860, 865 (8th Cir. 2017) ("[C]ourts in this circuit regularly grant service awards of $10,000 or greater.").

---

[1] According to the settlement agreement, "Representative Plaintiff … forever and fully" releases MGM from any causes of action, whereas the opt-in Plaintiffs release all wage and hour claims (Doc. 68-1 at 5–6).

## E. The appropriateness of attorneys' fees

"When the parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement." *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019). But "where…attorneys' fees [are] calculated as a percentage of settlement funds rather than negotiated separately," the Court *does* review the appropriateness of attorneys' fees because they are not negotiated separately from the FLSA claim. *Knighten v. Drury Hotels Co., LLC*, 2025 WL 2771477, *5 n. 1 (E.D. Mo. Sept. 29, 2025); *see Barbee*, 927 F.3d at 1027. In this case, attorneys' fees were determined at 35% of the Gross Settlement Amount ($154,000.00), plus $12,759.03 in litigation costs, for a total of $166,759.03 (Doc. 68-5 at 37). This total amount of $166,759.03 was taken out of the total FLSA Settlement of $440,000 (Doc. 68-1 at 4–5; Doc. 68-5 at ¶ 37). Therefore, the Court considers the appropriateness of these fees and costs award, which is necessarily intertwined with the FLSA claim (Doc. 68-1 at 4).

The FLSA contains a fee shifting provision. 29 U.S.C. § 216(b) ("The court in such action shall … allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"). The Court reviews the proposed fee award to determine whether it is fair and reasonable. *Melgar v. OK Foods*, 902 F.3d 775, 779–80 (8th Cir. 2018). "[W]here the parties have already agreed upon the fees to be paid, any required review need not be a line-by-line, hour-by-hour review of the attorneys' fees." *Id.* at 779. Reviewing attorneys' fees for a settlement is more deferential than a disputed case. *Id.* at 779–80.

Because the FLSA "does not discuss what constitutes a reasonable fee, the determination…must be reached through an evaluation of a myriad of factors, all within the knowledge of the trial court, examined in light of the congressional policy underlying the substantive portions of the statute providing for the award of fees." *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994) (cleaned up). "In a private FLSA action where the parties settled on the fee through negotiation, there is a greater range of reasonableness for approving attorney's fees." *King*, 2015 WL 631253 at *3.

7

Courts assessing the reasonableness of a fee award may consider factors including: "(1) the amount involved and the results obtained; (2) whether the fee is fixed or contingent; (3) the novelty and difficulty of the questions; (4) the experience, reputation, and ability of the attorneys; and (5) awards in similar cases." *Keil v. Lopez*, 862 F.3d 685, 703 (8th Cir. 2017).

Upon consideration of the relevant factors, the Court finds the requested attorneys' fees to be fair and reasonable. Plaintiffs' counsel took this case on a contingency basis, taking on risk (Doc. 68-5 ¶ 38–42). Plaintiffs' counsel obtained a recovery in this case for the class members. Plaintiffs' counsel are also experienced wage and hour attorneys who are experienced in cases like the one at hand. *Id*. at ¶¶ 5–7. Finally, the Court notes the attorneys' fee award is not out of range for other awards in this circuit. *See Johnson*, 2021 WL 2634669 at *7 (collecting cases in this Circuit where courts have approved fees ranging from 33 1/3% to 35%).

Plaintiff here has opted for the percentage-of-the-benefits option (Doc. 68 at 16). *See Huyer v. Buckley*, 849 F.3d 395, 398 (8th Cir. 2017) (noting courts use either the lodestar methodology or percentage of the benefits approach to award attorney's fees). "[The Eighth Circuit] ha[s] approved the percentage-of-recovery methodology to evaluate attorneys' fees in a common-fund settlement." *In re U.S. Bancorp Litig*., 291 F.3d at 1038. While the settlement agreement awards Plaintiffs' attorneys more in fees using the percentage-of-recovery method than the amount of fees reflected in Plaintiffs' billing statement (by about $50,000), Doc. 68-2, the recovery is still within the bounds of a reasonable fee amount, especially given the risk taken on by the attorneys.

8

## CONCLUSION

Parties' Motion to Approve Settlement (Doc. 68) is **GRANTED** the terms therein are approved.  It is further ordered that the above-captioned action is **DISMISSED** with prejudice.

Dated this 14th day of April, 2026.

MARIA A. LANAHAN
UNITED STATES DISTRICT JUDGE

9